## BAUGH v. GLASSELL-ROGERS DRILLING CO., Inc.

### No. 2001.

Court of Appeal of Louisiana. First Circuit.

June 30, 1939.

Porteous, Johnson & Humphrey and Wm. A. Porteous, Sr., all of New Orleans, for appellant.

T. Hale Boggs, of New Orleans, for appellee.

LeBLANC, Judge.

This is a suit to recover compensation under the Workmen's Compensation Statute, Act No. 20 of 1914, as amended, for the loss of an eye. The demand is for compensation in the maximum amount of $20 per week for a period of one hundred weeks, to which is also added a demand of $100 for facial disfigurement, another of $100 for the loss of a tooth, one of $100 for traveling expenses in making visits to doctors and one for $100 more for medical fees.

Plaintiff alleges that on March 1, 1938, he was employed as fireman and mechanic on boilers by the defendant, Glassell-Rogers Drilling Company, Inc., on an oil well drilling rig in the Parish of Terrebonne and that at three o'clock in the morning, while he was firing a boiler on a steam generator, the generator exploded causing a piece of metal to strike him on the right cheekbone. As a result of the blow to his cheekbone he alleges that he has suffered an injury to his right eye which is referred to as a hole in the macula and which has reduced vision in his eye to twenty-two-hundredths, meaning an impairment of almost 100% in the sight of that eye. In effect therefore, plaintiff contends that he has lost the total use of an eye which he was dependent on in his employment and without the use of which he is seriously handicapped in obtaining work.

The defendant for answer denies practically all the allegations of plaintiff's petition, admitting only that an accident as related therein was reported. It denies any liability whatever, averring that for some time after the alleged accident, plaintiff continued in its employ, that there is nothing wrong with him and that he is a malingerer.

On the issues as thus presented to it the lower court, after trial, rendered judgment in favor of the plaintiff awarding him compensation at the rate of $15 per

week for a period of one hundred weeks, plus the sum of $90 for some of the other demands made by him. The effect of the decision is that the court found an impairment of vision in the plaintiff's right eye to the extent of 75% as, by its judgment, it awarded that proportion of the amount of compensation claimed for one hundred weeks.

The defendant appealed and plaintiff has answered the appeal praying for an amendment of the judgment by increasing the amount of weekly compensation to the sum of $20 as originally prayed for. The answer makes no mention of the award made on the other items claimed.

From the testimony adduced it would now seem that the accident and the way in which it happened are no longer disputed. The preponderance of medical testimony, as well as the medical authorities referred to in the testimony, is to the effect that the injury which plaintiff sustained in his right eye, that is, a hole in the macula, is often caused by traumatism and that it was so caused in this case by the blow sustained by plaintiff to his cheekbone. The important question presented is the extent of impairment to the vision of his eye.

We learn from the medical testimony that the macula-lutea is a most vital part of the eye inasmuch as it controls central vision which is the more important of the two sights of the eye, the other being known as perepheral vision. Central vision is defined by one of the experts in this case as "the exact and clear vision of the thing you look directly at" and perepheral vision as "the less distinct vision of all surrounding things." It is easy to understand therefore why, in industrial life especially, central vision is so vital and important.

Five doctors who specialize in eye work appeared as witnesses in this case. Three of them, Drs. W. R. Buffington, Hugh E. Parsons and Marie Stanbery, testified in behalf of the plaintiff and the other two, Drs. Charles A. Bahn and Sam Bergman, on behalf of the defendant. A sixth, Dr. Alex. R. Crebbin who examined the plaintiff at the request of the defendant, did not testify but his report which is in the form of a letter to defendant's counsel was introduced and filed in the record.

Drs. Buffington, Parsons, Stanbery and Crebbin are all positive that the injury to the plaintiff's right eye is a hole in the macula, as a result of which he has lost central vision in that eye and that the injury either was or could have been produced by the blow he received on his cheekbone. From their testimony we learn that disease, especially one associated with old age, is one of the causes of such a condition in the eye but that trauma is also a frequent prevailing cause.

Drs. Buffington, Parsons, and Stanbery fix the vision in plaintiff's right eye at twenty-two-hundredths which means that he has an impairment in the central vision of that eye of from 90 to 95%. Dr. Crebbin in his report does not fix the loss of vision in terms of percentage but states that the "loss of sight in a direct focal line is considerable" and that "our most important sight is central vision." He states that in his opinion "the fact that other examiners have been able to obtain sight in this eye is that they were actually testing not exact central but more perepheral vision."

Drs. Bahn and Bergman refer to plaintiff's injury as a depression in the macula which we would judge from their testimony they consider to be very slight. Dr. Bahn fixes vision at twenty-two-hundredths-minus with an 8.5% disability in sight which he thinks is due to some previous injury or disease antedating the accident described by the plaintiff some three months. He states his conclusion to be that plaintiff has perfect vision in his left eye and twenty-thirtieths or better in the right and that maximum disability is approximately 8.5%. He concedes that a man with twenty-two-hundredths vision has a sight disability, industrially speaking, of 90%. Answering a hypothetical question he states that a man with a hole in the macula has a vision of twenty-seventieths, which according to certain charts registering these things, gives a disability of 36.1%. Dr. Bahn rates the proportion of cases in which accidents like the one described by plaintiff may produce a hole in the macula at five thousand to one. To say the least this is certainly at very great variance with the testimony of the other experts in the case.

Dr. Bergman found as a result of tests conducted by him that both of plaintiff's eyes were normal. On cross-examination he states that he found something in the right eye which resembles a hole in the macula and finally gives his conclusion that plaintiff sees twenty-thirtieths in that eye which is not normal actually but is

normal for industrial purposes. He also admits that a man with twenty-two-hundredths vision in an eye can not carry on industrial pursuits.

Drs. Bahn and Bergman seem to have been more interested in the malingering tests they put the plaintiff through and their opinions apparently are based on their convictions that plaintiff is a malingerer. This is altogether contrary to the findings of all the other experts including, we might state, those of Dr. Crebbin himself to whom plaintiff had been referred for examination by the defendant.

Our conclusion based upon the testimony as a whole is that plaintiff has lost central vision in his right eye, that perepheral vision in that eye is of little use to him, and that as far as his work which he was accustomed to perform is concerned, he has lost the use of an eye. That amounts, in contemplation of our Compensation Law, to the loss of the eye itself.

We hold therefore that plaintiff is entitled to an amendment of the judgment in the respect he prays for in his answer to the appeal.

It is therefore ordered that the judgment appealed from be, and the same is hereby amended by increasing the amount of the award of weekly compensation from the sum of $15 to the sum of $20, for a period of one hundred weeks so as to make the total amount of the award $2090 instead of $1590, and that as thus amended it be affirmed, all at the costs of the appellant.